# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

      Plaintiff/Respondent,

v.                                     Cr. No. 13-3696 RB/KK
                                     (Civ. No. 17-1225 RB/KK)

MATTHEW MALEY,

      Defendant/Movant.

## ORDER ADOPTING MAGISTRATE JUDGE'S
## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER is before the Court on: (1) Defendant/Movant Matthew Maley's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 290) ("Section 2255 Motion"), filed December 13, 2017; and, (2) Plaintiff/Respondent the United States' Motion to Strike Response to Surreply (Doc. 329) ("Motion to Strike"), filed July 23, 2018. In her Proposed Findings and Recommended Disposition (Doc. 380) ("PFRD") filed December 10, 2019, United States Magistrate Judge Kirtan Khalsa recommended that the Court deny Mr. Maley's Section 2255 Motion and deny the Government's Motion to Strike as moot. (*Id.* at 51.) Mr. Maley filed Objections to Proposed Findings and Recommended Disposition ("Objections") on January 23, 2020 (Doc. 383), and these Objections are now before the Court as well.

## I.     Standard of Review

District courts may refer dispositive motions to a magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b)(1). "Within 14 days after being served with a copy of the [magistrate judge's] recommended disposition, a party may serve and file specific written

objections to the proposed findings and recommendations." Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). In resolving objections to a magistrate judge's proposal,

> [t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Further, "[i]n this circuit, theories raised for the first time in objections to the magistrate judge's report are deemed waived." *United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996).

Where a party files timely and specific objections to the magistrate judge's recommendation on a dispositive motion, "the statute calls for a de novo determination, not a de novo hearing." *United States v. Raddatz*, 447 U.S. 667, 674 (1980). A de novo determination pursuant to 28 U.S.C. § 636(b) "requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation." *In re Griego*, 64 F.3d 580, 584 (10th Cir. 1995). Although a district court must make a de novo determination of objections to recommendations under 28 U.S.C. § 636(b)(1), the district court is not precluded from relying on the magistrate judge's proposed findings and recommendations. *See Raddatz*, 447 U.S. at 676 ("[I]n providing for a 'de novo determination' rather than de novo hearing, Congress intended to permit whatever reliance a district judge, in the exercise of sound judicial discretion, chose to place on a magistrate's proposed findings and recommendations.") (quoting 28 U.S.C. § 636(b)).

The Court will generally not review a proposed finding de novo where no party objects to it; instead, the Court will adopt the proposed finding unless it is "clearly erroneous, arbitrary,

obviously contrary to law, or an abuse of discretion." *Moody v. Dollar Tree Store No. 2967*, 402 F. Supp. 3d 1103, 1108–09 (D.N.M. 2019) (ellipses, brackets, and quotation omitted). This review, which is deferential to the magistrate judge's work in the absence of objections, nonetheless provides some oversight in the interests of justice.

Pursuant to 28 U.S.C. § 2255, a federal prisoner who

> claim[s] the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Relief under Section 2255 is available only if "the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (internal quotation marks and citation omitted) (superseded by statute on other grounds). Courts must presume "that the proceedings leading to [a] conviction were correct"; the burden is on the movant to demonstrate otherwise. *Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989) (citing *United States v. Morgan*, 346 U.S. 502, 512 (1954)). Section 2255 requires district courts to hold an evidentiary hearing on a prisoner's motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

The Court has considered Mr. Maley's Section 2255 Motion, the Government's Motion to Strike, the PFRD, and Mr. Maley's Objections in light of the foregoing standards and its review of the record. On these bases, and as explained below, the Court finds that Mr. Maley's Objections should be overruled, Judge Khalsa's PFRD should be adopted, Mr. Maley's Section 2255 Motion should be denied, and the Government's Motion to Strike should be denied as moot.

## II.     Procedural and Factual Background

Mr. Maley filed his *pro se* Section 2255 Motion on December 13, 2017. (Doc. 290.) In it, he claims that his counsel in the underlying criminal case were ineffective for failing to seek suppression of the evidence obtained as a result of officers' entry into, and subsequent seizure and search of, his travel trailer. (*Id.* at 13–21.) The Government responded in opposition to Mr. Maley's Section 2255 Motion on March 6, 2018 (Doc. 298); Mr. Maley filed a *pro se* reply on May 7, 2018 (Doc. 309); with leave, the Government filed a surreply on June 1, 2018 (Doc. 315); and Mr. Maley filed a *pro se* surresponse on June 25, 2018 (Doc. 326). On July 23, 2018, the Government filed its motion to strike Mr. Maley's surresponse. (Doc. 329.)

The Court appointed Todd Coberly to represent Mr. Maley on December 10, 2018 (Doc. 342), and ordered supplemental briefing on December 11, 2018 (Doc. 343). Mr. Maley filed a supplemental brief on March 11, 2019 (Doc. 350); the Government filed a supplemental response on May 1, 2019 (Doc. 357); and Mr. Maley filed a supplemental reply on May 13, 2019 (Doc. 359).

On June 17, 2019, Judge Khalsa scheduled an evidentiary hearing for August 29, 2019, which was later continued to October 4, 2019 at the Government's request. (Docs. 364; 370; 371.) However, on September 23, 2019, the parties filed a Notice of Stipulation regarding whether the firearms admitted into evidence at Mr. Maley's criminal trial were in plain view when officers entered Mr. Maley's trailer. (Doc. 376.) In the notice the parties stated that, given the stipulated facts, they did not believe that the evidentiary hearing scheduled for October 4, 2019, would be necessary. (*Id.* at 1.) Accordingly, Judge Khalsa vacated the hearing. (Doc. 377.)

Neither party has objected to the PFRD's procedural history of this case, the underlying criminal case, or the related criminal case in the District of Arizona (Doc. 380 at 1–6); likewise,

neither party has objected to the PFRD's detailed "Summary of Record Evidence Relevant to Mr. Maley's Section 2255 Motion."[1] (*Id.* at 6–19; *see generally* Doc. 383.) The Court has reviewed the procedural history and summary of record evidence and finds that they are not clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion. *One Parcel of Real Prop.*, 73 F.3d at 1060; *Moody*, 402 F. Supp. 3d at 1108–09. The Court will therefore adopt them, will assume the reader's familiarity with them, and will not restate their contents here except to highlight facts particularly relevant to the Court's analysis.

In his Section 2255 Motion, Mr. Maley argues that his attorneys in the underlying criminal case were ineffective because they failed to seek suppression of the evidence obtained as a result of officers' initial entry into, and subsequent seizure and search of, his travel trailer parked at 1920 West Gardner Lane in Tucson, Arizona, on November 17, 2013. (Docs. 290 at 13–21; 309 at 1–16.) According to Mr. Maley, a motion to suppress would have been meritorious and would have led to the exclusion at trial of all evidence obtained as a result of the officers' unlawful actions. (*Id.*) Mr. Maley further argues that the verdict against him would have been different had this evidence been excluded. (*Id.*)

In her PFRD, Judge Khalsa proposed to find that a motion to suppress evidence obtained as a result of officers' initial entry into Mr. Maley's trailer would have lacked merit, because officers had a valid warrant for Mr. Maley's arrest and reason to believe he resided and would be found within the trailer when they entered it. (Doc. 380 at 21–36); *see Payton v. New York*, 445

---

[1] In his Objections, Mr. Maley does add two factual details not included in the PFRD. First, he asserts that the front door of the double-wide trailer parked on the same property as his trailer was open on the morning of November 17, 2013. (Doc. 383 at 5.) This detail appears to have been disputed, with FBI Agent Bryan Acee testifying that the door was open but Mr. Maley's son Tyler testifying that it was "bumped shut." *Compare*, *e.g.*, *United States v. Maley*, Cr. No. 14-00637 FRZ-LAB (Doc. 61 at 34, 81) (D. Ariz.) *with id.* (Doc. 76 at 97–98). Second, Mr. Maley points out Agent Acee's stated expectation that Mr. Maley *and* his wife Denise would be present on the property that morning. (Doc. 383 at 5); *see*, *e.g.*, *Maley*, Cr. No. 14-00637 FRZ-LAB (Doc. 61 at 35–36, 73–74). For the reasons described below, the Court finds these additional details immaterial to the resolution of Mr. Maley's Section 2255 Motion and Objections.

U.S. 573, 603 (1980) ("[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."). Thus, she reasoned, the initial entry was lawful and the incriminating items officers observed in plain view while searching the trailer for Mr. Maley were not subject to suppression. (Doc. 380 at 34–36.)

The magistrate judge further proposed to find that, although officers' subsequent seizure and search of the travel trailer were unlawful, there is no reasonable probability that the verdict against Mr. Maley would have been different had the evidence obtained as a result of the unlawful conduct been suppressed. (*Id.* at 36–45.) She reasoned that suppression of the evidence in question would not have changed the jury's guilty verdict on the charge that Mr. Maley, a felon, illegally possessed a firearm. (*Id.*) In particular, Judge Khalsa noted that one of the items officers lawfully observed in plain view upon first entering Mr. Maley's trailer was a Mossberg 12-gauge shotgun admitted into evidence at trial; and, this firearm and admissible witness testimony about it were sufficient to support the jury's guilty verdict on the felon-in-possession charge. (*Id.*) The magistrate judge proposed to find that the admission into evidence of eight other firearms officers found during their subsequent unlawful search of the trailer did not prejudice Mr. Maley at trial or sentencing. (*Id.*)

Mr. Maley objects to the PFRD on two grounds. First, he claims that the magistrate judge erred in proposing to find that a motion to suppress evidence obtained as a result of officers' initial entry into his travel trailer would have lacked merit because the entry was consistent with the Fourth Amendment. (Doc. 383 at 3–7.) More specifically, Mr. Maley argues that officers lacked sufficient reason to believe he would be found within the trailer when they entered it to execute the warrant for his arrest on November 17, 2013. (*Id.*) *See also Payton*, 445 U.S. at 603.

Second, Mr. Maley claims that the magistrate judge erred in concluding that his counsel's failure to file a motion to suppress caused him no prejudice. (*Id.* at 7-9.) Mr. Maley concedes that Judge Khalsa's "conclusion that Mr. Maley suffered no prejudice stems mostly from her determination that the officers' initial entry into Mr. Maley's residence was lawful." (*Id.* at 7.) However, because he disagrees that the initial entry was lawful, he also disagrees that his counsel's failure to file a suppression motion caused him no prejudice. (*Id.*) In particular, Mr. Maley contends that the shotgun officers initially observed in plain view, as well as the eight other firearms they found later, should have been suppressed; and, if they had been, "the government would not have had sufficient evidence to convict Mr. Maley of being a felon in possession of a firearm." (*Id.*) Mr. Maley additionally argues that his counsel's failure to file a suppression motion prejudiced him because, even though his sentence "most likely would remain the same without the felon in possession conviction," the fact of this conviction "has continuing collateral consequences," and "he may also seek recovery of a special assessment the court imposed on him as a result of" it. (*Id.* at 8 (brackets omitted).)

## III. Analysis

### A. Standards Governing Ineffective Assistance of Counsel Claims

The Sixth Amendment to the United States Constitution guarantees persons accused of a crime the right to the effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 685–86 (1984). To succeed on a claim of ineffective assistance of counsel under the Sixth Amendment, a defendant must demonstrate both that: (1) counsel's representation fell below an objective standard of reasonableness; and, (2) the deficient performance prejudiced the defense. *Id.* at 687–88, 691–92; *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). In other words, a defendant alleging ineffective assistance of counsel must show both "incompetence and prejudice."

*Kimmelman*, 477 U.S. at 381. "Courts are free to address these two prongs in any order, and failure under either is dispositive." *United States v. Barrett*, 797 F.3d 1207, 1214 (10th Cir. 2015).

Regarding the first *Strickland* prong,

[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Strickland*, 466 U.S. at 689. Judicial review of counsel's performance is "highly deferential," *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011), and a defendant must overcome the strong presumption that his counsel rendered adequate assistance and "made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Id.*

To demonstrate that counsel's failure to file a motion to suppress evidence caused him prejudice under *Strickland*'s second prong, "the defendant must . . . prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman*, 477 U.S. at 375.

Although a meritorious Fourth Amendment issue is necessary to the success of a Sixth Amendment claim like respondent's, a good Fourth Amendment claim alone will not earn a prisoner federal habeas relief. Only those habeas petitioners who can prove under *Strickland* that they have been denied a fair trial by the gross incompetence of their attorneys will be granted the writ and will be entitled to retrial without the challenged evidence.

*Id.* at 382.

**B.      Whether Officers' Initial Entry into Mr. Maley's Trailer was Lawful**

In his Objections, Mr. Maley first argues that Judge Khalsa erred in proposing to find that the officers' initial entry into his travel trailer was consistent with the Fourth Amendment pursuant

to *Payton*, 445 U.S. at 603, and a motion to suppress evidence obtained as a result of the entry would therefore have lacked merit. (Doc. 383 at 3–7.) In *Payton*, the United States Supreme Court held that, under the Fourth Amendment, "an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. at 603. As discussed at some length in the PFRD, however, there is "a circuit split as to the showing necessary to satisfy *Payton*'s 'reason to believe' standard, with some courts equating reason to believe to probable cause and others holding that reason to believe is a lesser standard." *United States v. Bohannon*, 824 F.3d 242, 253 (2d Cir. 2016).

The appellate courts for the Second, Tenth, and District of Columbia Circuits have concluded that *Payton*'s "reason to believe" standard refers to something less than probable cause. *Id.* (citing *United States v. Thomas*, 429 F.3d 282, 286 (D.C. Cir. 2005), *reh'g in part on other grounds*, 179 F. App'x 60 (D.C. Cir. 2006); *Valdez v. McPheters*, 172 F.3d 1220, 1227 n.5 (10th Cir. 1999); *United States v. Lauter*, 57 F.3d 212, 215 (2d Cir. 1995)). "The logic behind these decisions is simple enough: the Supreme Court in *Payton* used a phrase other than 'probable cause' because it meant something other than 'probable cause.'" *United States v. Denson*, 775 F.3d 1214, 1217 (10th Cir. 2014) (Gorsuch, J.) (internal quotation marks and citation omitted).

The appellate courts for the Third, Fifth, and Ninth Circuits, in contrast, "have construed *Payton*'s reasonable-belief standard as equivalent to probable clause." *Bohannon*, 824 F.3d at 254 (citing *United States v. Vasquez-Algarin*, 821 F.3d 467, 480 (3d Cir. 2016); *United States v. Barrera*, 464 F.3d 496, 501 & n.5 (5th Cir. 2006); *United States v. Gorman*, 314 F.3d 1105, 1114–

15 (9th Cir. 2002)).[2] Notably, in *Denson*, the Tenth Circuit suggested that reason might exist to "reconsider" its determination that *Payton*'s "reason to believe" standard refers to something less than probable cause in light of the circuit split and the fact that "the Supreme Court itself has sometimes seemed to employ the term 'reasonable ground for belief' as part of the very definition of 'probable cause.'" *Denson*, 775 F.3d at 1217. However, the court declined to decide the question in that case because "nothing turn[ed] on its answer. Even if the officers needed probable cause to think [the defendant] was inside the home at the time of their entry, they had it." *Id.*

Whether the Court should apply Ninth or Tenth Circuit law to assess the merits of the suppression motion Mr. Maley claims his counsel should have filed is unclear. In general, this Court must follow Tenth Circuit law. *United States v. Spedalieri*, 910 F.2d 707, 709 n.2 (10th Cir. 1990); *New Mexico v. Dep't of Interior*, 269 F. Supp. 3d 1145, 1152 (D.N.M. 2014); *Gonzales v. Passino*, 222 F. Supp. 2d 1277, 1281 (D.N.M. 2002). However, several district courts have held that where, as here, a court in one circuit is considering the propriety of officers' actions in another circuit, the court should apply the law of the circuit where the officers' challenged conduct occurred, *i.e.*, the "lex loci." *See, e.g.*, *United States v. Kennedy*, No. CRIM. 13-240, 2014 WL 6090409, at *5 (W.D. Pa. Nov. 13, 2014); *United States v. Gates*, No. CRIM. 08-42-P-H, 2008 WL 5382285, at *7 (D. Me. Dec. 19, 2008), *aff'd*, 709 F.3d 58 (1st Cir. 2013); *United States v. Barragan*, 589 F. Supp. 2d 1012, 1015–16 (S.D. Ind. 2008); *United States v. Ozuna*, 129 F. Supp.

---

[2] The First, Sixth, Seventh, and Eleventh Circuits have not, to date, ruled conclusively on this question. *Bohannon*, 824 F.3d at 254 (citing *United States v. Hamilton*, 819 F.3d 503, 506 n.5 (1st Cir. 2016) (assuming without deciding that "reasonable belief is a lesser standard than probable cause" and concluding that evidence satisfied probable-cause standard); *United States v. Jackson*, 576 F.3d 465, 469 (7th Cir. 2009) (declining to "decide whether reasonable belief requires probable cause or something less" because "police had enough evidence to easily satisfy a probable cause standard") (internal quotation marks and citation omitted); *United States v. Hardin*, 539 F.3d 404, 416 & n.6 (6th Cir. 2008) (declining to decide whether "lesser reasonable-belief standard applies" because officers' belief did not satisfy even that lower standard, but stating in dicta that probable cause is correct standard); *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir. 1995) ("[I]t is difficult to define the *Payton* 'reason to believe' standard, or to compare the quantum of proof the standard requires with the proof that probable cause requires.")).

2d 1345, 1354 (S.D. Fla. 2001), *aff'd*, 48 F. App'x 739 (11th Cir. 2002); *United States v. Longo*, 70 F. Supp. 2d 225, 261 (W.D.N.Y. 1999); *United States v. Gerena*, 667 F. Supp. 911, 914–24 (D. Conn. 1987). In choosing to follow this approach, courts have generally reasoned that officers should be able to rely on their understanding of the law as their circuit has interpreted it. *Kennedy*, 2014 WL 6090409 at *5; *Gates*, 2008 WL 5382285 at *7; *Ozuna*, 129 F. Supp. 2d at 1354; *Gerena*, 667 F. Supp. at 918.

In this case, the officers' challenged conduct occurred in Arizona, which would seem to indicate that the Court should apply Ninth Circuit law to assess its propriety. However, about half of the officers who engaged in the challenged conduct were employed in New Mexico, *see, e.g.*, *Maley*, Cr. No. 14-00637 FRZ-LAB (Doc. 61 at 29–30, 64–65, 67–70); the arrest warrant the officers were trying to execute was issued by this Court in New Mexico (Doc. 5); and the investigation leading to the arrest warrant's issuance occurred in New Mexico. (*See generally* Docs. 163–65; 167.) These circumstances make it more difficult to ascertain which law should apply. Arguably, New Mexico officers trying to execute a New Mexico warrant arising out of a New Mexico investigation should have been able to rely on their understanding of the law as the Tenth Circuit has interpreted it.

The magistrate judge found it unnecessary to decide whether Ninth or Tenth Circuit law applies because she determined that there was no constitutional violation even under the Ninth Circuit's more demanding precedent. (Doc. 380 at 25.) In his Objections, Mr. Maley likewise asserts that "it is unnecessary to wade into the issue of whether Ninth or Tenth Circuit law applies," but nevertheless objects to the magistrate judge's conclusion that the officers' initial entry into Mr. Maley's trailer was lawful under either circuit's interpretation of *Payton*. (Doc. 383 at 3.) In deciding this issue de novo, the Court has carefully reviewed the record, the relevant law, and the

parties' submissions, including Mr. Maley's Objections. For the following reasons, the Court agrees with the magistrate judge that it need not decide whether to apply Ninth or Tenth Circuit law in this case, because officers had probable cause to believe that Mr. Maley would be found within his travel trailer when they entered it on November 17, 2013, thereby satisfying either circuit's precedent.

As the Supreme Court has observed,

> [p]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. The probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances.

*Maryland v. Pringle*, 540 U.S. 366, 370–71 (2003) (internal quotation marks and citations omitted). Notwithstanding the standard's highly fact-dependent nature, controlling precedent does provide some guidance regarding its requirements. "Probable cause is not a high bar." *District of Columbia v. Wesby*, — U.S. —, 138 S. Ct. 577, 586 (2018) (internal quotation marks and citation omitted). It

> doesn't require proof that something is more likely true than false. It requires only a "fair probability," a standard understood to mean something more than a "bare suspicion" but less than a preponderance of the evidence at hand. When assessing whether the government meets the probable cause standard we look to the "totality of the circumstances."

*Denson*, 775 F.3d at 1217 (quoting *United States v. Ludwig*, 641 F.3d 1243, 1252 & n.5 (10th Cir. 2011) and *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Thus, courts interpreting *Payton* to require probable cause have asked whether officers' information established a fair probability under the totality of the circumstances that the arrestee was residing at and present within a dwelling when the officers entered it to execute a valid arrest warrant. *Id.*; *United States v. Garibay*, 334 F. App'x 91, 92 (9th Cir. 2009); *United States v. Godbey*, 208 F. App'x 567, 568 (9th Cir. 2006).

Whether equivalent to probable cause or not, *Payton*'s "reason to believe" standard is "common-sense" and fact-specific. *United States v. Diaz*, 491 F.3d 1074, 1078 (9th Cir. 2007); *Anderson v. Campbell*, 104 F.3d 367, at *3 (10th Cir. 1996). As such, it would be impossible to list every consideration that might affect its application. However, considerations the Ninth and Tenth Circuits have recognized include: the presence of a vehicle at the residence, *United States v. Thompson*, 402 F. App'x 378, 385–86 (10th Cir. 2010); *Valdez*, 172 F.3d at 1226; *United States v. Morehead*, 959 F.2d 1489, 1496, *on reh'g sub nom. United States v. Hill*, 971 F.2d 1461 (10th Cir. 1992); *United States v. Litteral*, 910 F.2d 547, 554 (9th Cir. 1990); the time of day and the day of the week, *Denson*, 775 F.3d at 1217; *Godbey*, 208 F. App'x at 568; *Thompson*, 402 F. App'x at 386; *Diaz*, 491 F.3d at 1078; *Valdez*, 172 F.3d at 1226; the words and conduct of other persons at the residence, *Thompson*, 402 F. App'x at 386; the use of lights or other electrical devices at the residence, *Denson*, 775 F.3d at 1217–18; *Valdez*, 172 F.3d at 1226; the circumstances of the suspect's employment, *Denson*, 775 F.3d at 1217; *Diaz*, 491 F.3d at 1078; *Valdez*, 172 F.3d at 1226; and an absence of evidence that the suspect is elsewhere. *Denson*, 775 F.3d at 1217; *Valdez*, 172 F.3d at 1226.

Critically, "a probable cause determination can be supported entirely by circumstantial evidence." *Diaz*, 491 F.3d at 1078. Thus, in both the Ninth and Tenth Circuits, officers may have reason to believe that an arrestee is present within a residence even though he has not actually been seen there. *See, e.g.*, *id.* (officers had probable cause to believe defendant was in his house even though there were "some signs that [he] might be gone" and "[a]gents did not see [him] on his property"); *United States v. Gay*, 240 F.3d 1222, 1227 (10th Cir. 2001) ("[O]fficers are not required to actually view the suspect on the premises" and "may take into account the fact that a

person involved in criminal activity may be attempting to conceal his whereabouts.") (citing *Valdez*, 172 F.3d at 1226).

In this case, following a de novo review of the record, the Court is convinced that the information known to officers when they entered Mr. Maley's travel trailer on November 17, 2013, established a fair probability that Mr. Maley resided and would be found within the trailer at that time.[3] Officers had robust evidence that Mr. Maley resided in the white, blue-striped fifth-wheel travel trailer at issue. (*See* Doc. 163 at 38); *Maley*, Cr. No. 14-00637 FRZ-LAB (Doc. 61 at 11-13). They saw him inside the trailer during an undercover drug buy on August 1, 2013 and outside it cleaning a bicycle the next morning. (Doc. 163 at 39, 44); *Maley*, Cr. No. 14-00637 FRZ-LAB (Doc. 61 at 14-15, 17). Later in August 2013, they acquired a bill of sale documenting his purchase of the trailer and confirmed that he and his then-girlfriend, Sarah Stonestreet, were renting the space where it was located at that time. *Maley*, Cr. No. 14-00637 FRZ-LAB (Doc. 61 at 11, 18-20, 22). Between September 2013 and November 17, 2013, officers learned that Mr. Maley had listed 1920 West Gardner Lane—the Tucson address to which his trailer had by then been moved—as his address on his Arizona driver's license or identification card and on his vehicle registrations. (*Id.* at 27–28.) They also learned that his wife Denise lived at the same address. (*Id.* at 73–74.) In short, officers had ample reason to believe Mr. Maley was residing in the trailer in November 2013.

In addition, the Court finds that the totality of the circumstances known to officers when they entered Mr. Maley's trailer on November 17, 2013, established a fair probability that they

---

[3] In neither his Section 2255 Motion nor his Objections does Mr. Maley dispute that officers had probable cause to believe he resided in the trailer on the morning of November 17, 2013. (*See generally* Docs. 290; 309; 350; 359.) Rather, he disputes that officers had probable cause to believe he would be found within the trailer at that time. (Docs. 290 at 15; 309 at 6-8; 350 at 4-5; 359 at 2.) However, the factors relevant to these two issues overlap somewhat and the Court will therefore address them both.

would find him within it at that time. First, officers entered the trailer at 9:00 a.m. on a Sunday, a time and day when people are generally, if not at church, then at home. (*Id.* at 30, 67, 69–70.) Second, officers knew that Mr. Maley had not had legitimate employment since 2007, making it less likely that he would be working away from home that morning. (*Id.* at 22–23.) Third, there were three vehicles parked by Mr. Maley's trailer when officers arrived, including the black Dodge 1500 Ram pickup truck previously seen parked by his trailer in Las Cruces on several occasions.[4] (*Id.* at 13, 16–18, 31, 33, 49; Doc. 76 at 90–91). These vehicles had changed positions in the days leading up to November 17, 2013, indicating that someone was driving them. *Maley*, Cr. No. 14-00637 FRZ-LAB (Doc. 76 at 73.) Fourth, the trailer's set-up showed that it was in active use as a residence: it was on blocks; its stairs, awnings, and slide-outs were extended; and it was connected to power, water, and a septic system. (*Id.* at 64, 68–70; Doc. 61 at 32–33.)

Fifth, there was a substantial likelihood that Mr. Maley knew officers were looking for him and was avoiding them. He had moved away from Las Cruces in September 2013 and left no forwarding address. *Maley*, Cr. No. 14-00637 FRZ-LAB (Doc. 61 at 26–27). Several people associated with the criminal investigation implicating him were arrested in a "takedown" on November 14, 2013. (*Id.*) The trailer's blinds were drawn and a surveillance camera pointed at its entrance. (Doc. 61 at 52, 131; Doc. 76 at 43–44, 69–70). Mr. Maley's probable awareness of his fugitive status "too made it incrementally more likely that he would be holed up at home rather than out and about." *Denson*, 775 F.3d at 1217.

Sixth, by shouting a warning about the presence of law enforcement when officers first arrived at 1920 West Gardner Lane, Mr. Maley's sons clearly communicated their belief that

---

[4] In addition to the black pickup truck, a silver Range Rover and a green Silverado were parked on the property. *Maley*, Cr. No. 14-00637 FRZ-LAB (Docs. 61 at 31, 33, 49; 76 at 90–91). Notably, the black pickup truck was equipped with a towing package, suggesting that it was the vehicle used to tow Mr. Maley's trailer from Las Cruces to Tucson in September 2013. *Maley*, Cr. No. 14-00637 FRZ-LAB (Doc. 61 at 32).

another person was concealed on the property that morning. *Maley*, Cr. No. 14-00637 FRZ-LAB

(Docs. 61 at 34, 36, 81; 76 at 21, 35–37). And finally, on the morning of November 17, 2013,

officers lacked information that Mr. Maley was somewhere other than his residence.[5] "[I]n

isolation none of these facts may mean much. Even together they hardly prove [Mr. Maley was]

at home. But in combination . . . they are enough to establish probable cause (a fair probability)

for such a conclusion." *Denson*, 775 F.3d at 1218.

According to Mr. Maley, the foregoing facts and circumstances, except for the warning

shouted by Mr. Maley's sons, are inadequate because they are "generic." (Doc. 383 at 4–5.) The

Court disagrees. Initially, several of these facts are specific to Mr. Maley, including his extended

unemployment, the presence of the black pickup truck previously associated with him, and his

likely knowledge that officers were seeking to arrest him. Moreover, Mr. Maley fails to point to

any caselaw holding that "generic" facts cannot contribute to probable cause under *Payton*, and

the Court has found none. On the contrary, many of the factors on which courts have relied to find

probable cause under *Payton* are generic, circumstantial, or both, *e.g.*, the time of day, the day of

the week, the use of lights or other electrical devices, and the absence of evidence that the suspect

is elsewhere. *Denson*, 775 F.3d at 1217–18; *Godbey*, 208 F. App'x at 568; *Thompson*, 402 F.

App'x at 386; *Diaz*, 491 F.3d at 1078; *Valdez*, 172 F.3d at 1226.

Mr. Maley also downplays the significance of the undeniably specific evidence that one of

Mr. Maley's sons shouted a warning to someone else on the property when officers first arrived.

(Doc. 383 at 5.) Mr. Maley makes much of the fact that the warning was shouted "toward the

double-wide" trailer associated with Mrs. Maley, and not toward Mr. Maley's travel trailer. (*Id.*)

---

[5] On November 18, 2013, officers learned that the olive-green Land Rover they had previously seen Ms. Stonestreet driving was photographed at a checkpoint between Las Cruces and Albuquerque on November 15, 2013. *Maley*, Cr. No. 14-00637 FRZ-LAB (Docs. 61 at 18–22; 76 at 10-12). However, they did not have this information when they entered Mr. Maley's trailer on November 17, 2013. (*Id.*)

There are at least three problems with Mr. Maley's argument that this vitiates probable cause. First, it is absurd for Mr. Maley to argue that he had no connection to the double-wide when his wife lived in it and it was parked at the same address as his travel trailer. Second, officers protectively swept the double-wide and found no one inside before they proceeded to enter Mr. Maley's trailer. *Maley*, Cr. No. 14-00637 FRZ-LAB (Docs. 61 at 36-38; 76 at 21–23). In other words, they reasonably eliminated the double-wide as the most likely location of the warning's intended recipient and only then moved on to Mr. Maley's trailer as the next most likely location. Finally, the warning's substance supports the officers' belief that Mr. Maley was its intended recipient, because officers had reason to suspect Mr. Maley would want to be alerted to the presence of law enforcement but lacked similar information about Mrs. Maley.

In his Objections, Mr. Maley devotes some time to discussing other cases in which courts have decided whether officers had sufficient reason to believe a suspect would be found within his residence under *Payton*. (Doc. 383 at 5–6.) In so doing, he tries to analogize his case to two decisions in which the court found that officers lacked sufficient reason to believe the arrestee was at home, *i.e.*, *United States v. Chavez*, 561 F. App'x 730, 733 (10th Cir. 2014), and *United States v. Kratzer*, 10 F. App'x 784, 787 (10th Cir. 2001). (Doc. 383 at 6.) Mr. Maley points out that in *Chavez*, as in this case, "officers relied on the time of day and the presence of a vehicle at the suspect's residence" to satisfy *Payton*'s reason-to-believe standard. (*Id.*) However, he fails to add that, unlike the officers in this case, the officers in *Chavez* had no information suggesting that the vehicle in question belonged to the suspect and no information about his schedule or lack thereof. 561 F. App'x at 733.

In *Kratzer*, in turn, officers had information that the defendant, who was on supervised release, had a drug counseling appointment at 5:30 p.m., was not working until 8:00 p.m., and

"would probably be driving a small Ford sedan." 10 F. App'x at 786–87. At 2:00 p.m., officers went to the defendant's home, which had an attached two-car garage and "some outbuildings including a detached shed" on the "periphery." *Id.* at 786. One of the garage doors was ajar, through which officers could see that no cars were parked inside. *Id.* The only vehicle on the premises was a 1978 Chevy pickup truck located in the detached shed. *Id.* at 786-87. A door leading from the garage to the home was closed but unlocked; all of the remaining doors were closed and locked. *Id.* One officer "testified that the way the sun was reflecting on the windows, it was difficult to see in the house," but "he briefly saw a movement of what appeared to be a person," though "he could not in any way describe the person he thought he saw." *Id.* (quotation marks omitted).

There is no suggestion that the defendant in *Kratzer* knew there was a warrant for his arrest or was trying to avoid law enforcement officers. *See generally id.* As a result, the facts that no lights or sounds came from inside the residence and no one answered officers' knock-and-announce had greater significance in *Kratzer* than they do in this case, where Mr. Maley most likely knew that officers were trying to arrest him and had taken steps to avoid them.[6] *Id.* at 787. Further, in *Kratzer*, "there were no vehicles parked in the garage, on the drive, or in front of the home," only "an old Chevy truck located in the detached shed, several yards away from the house." *Id.* Notably absent was any car resembling the small Ford sedan officers had been told the defendant would probably be driving. *Id.* In contrast, in this case, there were three vehicles parked by the trailers at 1920 West Gardner Lane, including the black pickup truck previously associated with Mr. Maley in Las Cruces. And, in *Kratzer*, though one officer thought he saw movement in

---

[6] Agent Acee testified that, in his experience, it is "not unusual" to hearing silence in a residence when executing an arrest warrant for a fugitive, because sometimes fugitives hide and remain still and quiet. *Maley*, Cr. No. 14-00637 FRZ-LAB (Doc. 61 at 132).

the house, his testimony appears to have been equivocal on this point, whereas in this case the shouted warning of Mr. Maley's sons plainly communicated their belief that another person was somewhere on the property. *Id.* Thus, the Court concludes that Mr. Maley's case is not sufficiently analogous to either *Chavez* or *Kratzer* to support the result he seeks.

Mr. Maley also tries to distinguish his case from three decisions finding that officers *did* have sufficient reason to believe the arrestee would be found within his residence when they entered it to execute an arrest warrant, *i.e.*, *Denson*, *Gay*, and *Diaz*. (Doc. 383 at 5–6.) According to Mr. Maley, *Denson* is distinguishable because officers in that case observed the electric meter attached to the defendant's residence "going faster than normal," 775 F.3d at 1217–18, whereas in this case there was no evidence that someone was using electrical devices inside Mr. Maley's trailer. (Doc. 383 at 5.) That much is true; however, in this case, officers relied on other facts not present in *Denson* to establish probable cause to believe that Mr. Maley was at home. As in *Denson*, officers in this case had sturdy evidence that Mr. Maley resided at the residence in question and knew that he was likely to be at home on the day and at the time of entry and appeared to be trying to conceal his whereabouts. *Denson*, 775 F.3d at 1217–18. However, in *Denson*, there is no indication that any vehicles were parked outside the home, whereas in this case, again, there were three vehicles parked at 1920 West Gardner Lane, including one previously associated with Mr. Maley. And in *Denson*, no one's conduct suggested the presence of someone concealed on the property, whereas in this case, Mr. Maley's sons' shouted warning certainly did.[7] The facts on

---

[7] The Court notes that in *Denson*, officers also relied on a Doppler radar device that "registered someone's presence" inside the defendant's residence and "fresh footprints in the snow" around the residence to justify their entry. 775 F.3d at 1218. However, the Tenth Circuit expressly disavowed any reliance on this information in finding that officers had probable cause to believe the defendant was at home, due to the constitutionally questionable manner in which the information was obtained. *Id.*

which officers relied to establish probable cause in this case are thus at least as strong as the facts on which the officers in *Denson* relied.

In comparing his case to *Gay*, Mr. Maley compares apples to oranges, because the operative facts in that case are simply very different from the operative facts in this one.[8] To demonstrate probable cause in *Gay*, officers relied on the particularized information of a confidential informant and a "thud" inside the defendant's house immediately after they knocked and announced. 240 F.3d at 1225. Because it is so factually distinct, *Gay* provides little guidance regarding whether officers in this case had probable cause to believe Mr. Maley was at home.

Finally, Mr. Maley argues that "[n]one of [the] types of objectively concrete facts" present in *Diaz* are present in this case. (Doc. 383 at 6.) Mr. Maley is mistaken. As in *Diaz*, 491 F.3d at 1076, officers in this case knew that Mr. Maley was not employed away from home and had previously observed him at his residence during the day. Like the *Diaz* defendant, Mr. Maley had covered his residence's windows and installed a surveillance camera at its entrance, thereby "prevent[ing] the agents from safely and unobtrusively observing" its interior. *Id.* at 1078. Like the *Diaz* officers, the officers in this case had reason to believe Mr. Maley was at home even though he did not promptly answer their knock-and-announce, *i.e.*, he likely knew officers wanted to arrest him.[9] And in this case, as in *Diaz*, officers had reason to believe that an unknown person was concealed on the property. In *Diaz*, officers saw "two unidentified people standing next to a red SUV," which then drove away with one person visible in it. 491 F.3d at 1076. In this case, officers encountered Mr. Maley's sons and heard them shout to an unknown person about police being

---

[8] The only relevant fact *Gay* shares with this case is that both the *Gay* defendant and Mr. Maley were fugitives. 240 F.3d at 1224.

[9] In *Diaz*, officers had reason to believe the defendant was at home even though he did not promptly answer their knock-and-announce because on a previous occasion he had taken 45 minutes to answer the door. 491 F.3d at 1076.

present. In addition, at least one factor supporting probable cause in this case was lacking in *Diaz*. Specifically, in *Diaz*, the defendant's vehicle was not visible, 491 F.3d at 1078, while in this case, again, officers saw three vehicles parked at 1920 West Gardner Lane, including one previously associated with Mr. Maley.

Comparisons between the case at hand and the specific factual circumstances presented in other cases can of course be illuminating on the question of probable cause. In the Court's view, *Chavez*, *Kratzer*, *Denson*, *Gay*, and *Diaz* reinforce its determination that officers had probable cause to believe Mr. Maley was at home when they entered his travel trailer on November 17, 2013. However, because the question must be decided based on the totality of the circumstances, *Denson*, 775 F.3d at 1217, and because no two cases are identical, such comparisons cannot be dispositive. Ultimately, as it must, the Court has considered the totality of the facts and circumstances of *this* case and has determined that these particular facts and circumstances are sufficient to demonstrate probable cause to believe Mr. Maley would be found within his travel trailer when officers entered it to arrest him on November 17, 2013. The Court will therefore adopt the magistrate judge's proposed finding that a motion to suppress evidence obtained as a result of officers' initial entry into Mr. Maley's trailer would have lacked merit because the entry was lawful under *Payton* and the Fourth Amendment. Mr. Maley's objections to the contrary will be overruled.

**C.    Whether Counsel's Failure to Seek Suppression was Prejudicial**

In her PFRD, Judge Khalsa concluded that, although the officers' initial entry into Mr. Maley's trailer was lawful, their subsequent seizure and search of the trailer were not, and a motion to suppress evidence obtained as a result of the latter conduct would therefore have had merit. (Doc. 380 at 36–40.) However, the *Strickland* prejudice inquiry does not end there. Rather, to show

prejudice under *Strickland* and its progeny, Mr. Maley must also demonstrate a reasonable probability that the verdict against him would have been different had evidence obtained from the unlawful seizure and search been suppressed. *Kimmelman*, 477 U.S. at 375; *Strickland*, 466 U.S. at 695 ("When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."). In her PFRD, the magistrate judge found no reasonable probability that the verdict against Mr. Maley would have been different had the unlawfully obtained evidence at issue been suppressed. (Doc. 380 at 40–45.) As explained below, notwithstanding Mr. Maley's objections to the contrary, the Court agrees.

In his Objections, Mr. Maley claims that his counsel's failure to file a motion to suppress prejudiced him for two reasons. First, he argues that this failure caused him prejudice "because a motion to suppress all evidence obtained as a result of the officers' illegal entry into Mr. Maley's home would have been meritorious"; and had such a motion been filed, "the government would not have had any firearms to introduce into evidence" to support the charge that he illegally possessed a firearm as a felon. (Doc. 383 at 7 (emphasis omitted).) However, the Court has already determined that a motion to suppress evidence obtained as a result of officers' initial entry into Mr. Maley's trailer would *not* have been meritorious, which fatally undercuts this argument.

Second, Mr. Maley argues that the collateral consequences and special assessment fee associated with his felon-in-possession conviction caused him prejudice even though the conviction did not increase his sentence. (Doc. 383 at 7–9.) This argument is true as far as it goes but misses the point. The Court has no quarrel with the proposition that a criminal conviction is prejudicial even if it does not increase a defendant's sentence, because it carries negative collateral consequences and a special assessment fee. *See Prost v. Anderson*, 636 F.3d 578, 582 n.3 (10th

Cir. 2011); *Dhinsa v. Krueger*, 917 F.3d 70, 73, 77–78 (2d Cir. 2019). In this case, however, the fact remains that counsel's failure to file a motion to suppress was *not* prejudicial, because there is no reasonable probability that such a motion would have *either* changed the jury's guilty verdict on the felon-in-possession charge *or* increased Mr. Maley's sentence.

In his Objections, Mr. Maley does not challenge the magistrate judge's proposed finding that the Government proved all of the elements of the felon-in-possession charge via the Mossberg 12-gauge shotgun officers saw in plain view upon entering Mr. Maley's trailer and the testimony related to this firearm. (*See generally* Doc. 383.) Mr. Maley likewise does not dispute that, if the officers' initial entry into his trailer was lawful, the plain view doctrine would permit the admission of the shotgun into evidence. (*Id.*) *See also, e.g.*, *Horton v. California*, 496 U.S. 128, 136–37 (1990); *Harman v. Pollock*, 586 F.3d 1254, 1264 (10th Cir. 2009). Thus, Mr. Maley necessarily concedes that, if the officers' initial entry into his trailer was lawful, suppression of the eight other firearms found during officers' subsequent unlawful search of his trailer would not have changed the verdict against him on the felon-in-possession charge.[10] Mr. Maley additionally concedes that suppression of the eight other firearms would not have changed his sentence.[11] (Doc. 383 at 8.)

## IV. Conclusion

In sum, the record conclusively demonstrates that Mr. Maley cannot satisfy *Strickland*'s prejudice prong with respect to his ineffective assistance of counsel claims based on his counsel's failure to seek suppression of the evidence obtained as a result of the officers' initial entry into his

---

[10] Also, Mr. Maley fails to even mention, much less challenge, the magistrate judge's proposed finding of no reasonable probability that the verdict against Mr. Maley would have been different had the documents and photographs officers found during their unlawful search of his trailer been suppressed. (*See generally* Doc. 383; *see also* Doc. 380 at 43-45.)

[11] Indeed, Mr. Maley concedes that his sentence would have been the same even if the Court had suppressed *all* of the firearms admitted into evidence, including the shotgun found in plain view. (Doc. 383 at 8 ("Mr. Maley understands that his sentence most likely would remain the same without the felon in possession conviction.").)

travel trailer, because a motion to suppress such evidence would have lacked merit. The record also conclusively demonstrates that Mr. Maley cannot satisfy *Strickland*'s prejudice prong with respect to his ineffective assistance of counsel claims based on his counsel's failure to seek suppression of the evidence obtained as a result of officers' subsequent search and seizure of his trailer, because there is no reasonable probability that the verdict against him would have been different had this evidence been suppressed. The Court will therefore deny Mr. Maley's Sixth Amendment claims brought on these bases and overrule his Objections to the PFRD. *See Barrett*, 797 F.3d at 1214 ("[F]ailure under either [*Strickland* prong] is dispositive.").

In addition, the Court has reviewed the portions of the PFRD to which neither party objected and, as to these portions, "cannot say that the Magistrate Judge's recommendation is clearly erroneous, arbitrary, obviously contrary to law, or an abuse of discretion." *Moody*, 402 F. Supp. 3d at 1108–09 (ellipses, brackets, and quotation omitted). The Court will therefore adopt the PFRD, deny Mr. Maley's Section 2255 Motion, and deny the Government's Motion to Strike as moot.

**THEREFORE,**

**IT IS ORDERED**:

1.     Mr. Maley's Objections to Proposed Findings and Recommended Disposition (Doc. 383) are **OVERRULED**;

2.     The Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 380) are **ADOPTED**;

3.     Mr. Maley's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Doc. 290) is **DENIED**; and,

4.      The Government's Motion to Strike Response to Surreply (Doc. 329) is **DENIED**

**AS MOOT**.

IT IS SO ORDERED.

_____
ROBERT C. BRACK
SENIOR U.S. DISTRICT JUDGE